IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

NEW CINGULAR WIRELESS PCS, LLC,      )
   d/b/a AT&T MOBILITY               )
                                 )
       Plaintiff,                    )
                                   )
   v.                               )      1:10cv283(LMB/IDD)
                                   )
FAIRFAX COUNTY BOARD OF              )
   SUPERVISORS                       )
                                   )
       Defendant.                    )

## MEMORANDUM OPINION

Before the Court are the parties' cross-motions for summary judgment. For the reasons discussed below, the plaintiff's motion will be denied and the defendant's motion granted.

## I. Background

This civil action concerns the denial of an application by New Cingular Wireless PCS, LLC ("Cingular") for a special exception permit to build a wireless telecommunications facility on the grounds of the Mount Vernon Masonic Lodge #219, located at 8717 Fort Hunt Road, Alexandria, Virginia 22308 ("the proposed site"). Cingular is a telecommunications company doing business as AT&T Mobility, which made several related proposals to construct a wireless tower on the proposed site in an effort to improve its cellular coverage in the Fort Hunt area. The Fairfax County Board of Supervisors ("Fairfax Board"), however, rejected Cingular's Special Exception Application for the proposed wireless tower. In

response, Cingular brought this lawsuit alleging violations of the Telecommunications Act.

Cingular first submitted its application for a special use exception on or about May 19, 2008, seeking the Fairfax Board's approval to permit construction of an 85-foot high wireless telecommunications flagpole, antennas, and related ground equipment ("the flagpole facility") at the proposed Masonic Lodge site, which is located in the middle of a residential district. Cingular simultaneously submitted another zoning application to the Fairfax County Planning Commission ("Planning Commission"), seeking a determination as to whether the construction of the proposed cellular flagpole substantially conformed to the County's Comprehensive Plan, as required by Va. Code Ann. § 15.2-2232. On approximately August 12, 2009, Cingular amended its application to replace the proposed flagpole facility with a proposal for an 88-foot tall monopole designed to look like a tree ("the treepole"). Cingular also represented that all necessary telecommunications equipment would be enclosed in an equipment shed that would be designed to resemble the architecture of the Masonic Lodge.

On September 24, 2009, the Planning Commission held a public hearing on Cingular's application. Several individuals who live near the proposed site testified at that hearing in opposition to the construction of the wireless tower. Nevertheless, the Planning Commission found that the proposed facility substantially conformed to the Comprehensive Plan, in accordance with Va. Code Ann. § 15.2-

2232. Accordingly, the Planning Commission made a recommendation to the Fairfax Board, the final decisionmaker, for approval of Cingular's Special Exception Application.

On February 23, 2010, the Fairfax Board conducted a public hearing on Cingular's proposed facility. During the hearing, Gerald W. Hyland, a Supervisor in the Mount Vernon District, submitted a petition opposing the proposed facility. The petition was signed by forty-seven residents of Fort Hunt neighborhoods and other nearby communities, all of which are in close proximity to the proposed site. Supervisor Hyland also submitted a sign-in sheet signed by twenty-one community members who had attended a community meeting held to address their opposition to the proposed facility. At the conclusion of the hearing, the Fairfax Board voted, by a vote of 6-2, to deny Cingular's Special Exception Application.[1] Among the reasons for the denial, the Board cited concerns that the facility did not conform to the Comprehensive Zoning Plan and the residential character of the surrounding community, that Cingular had failed to adequately pursue other possible locations for its wireless facility, and that the proposed flagpole or treepole would have a substantially adverse visual impact on adjacent residential areas. On February 24, 2010, the Clerk of the Fairfax Board issued a formal letter to Cingular's representative, stating that the Board had denied Cingular's Special Exception Application.

---

[1] One Board member abstained from the vote, and another was not present. Only Supervisors John C. Cook and Pat Herrity voted against the motion to deny Cingular's Special Exception Application.

3

On March 23, 2010, Cingular filed this lawsuit under the Telecommunications Act. Specifically, Cingular alleges that the Fairfax Board's denial of Cingular's Special Exception Application was not a decision supported by substantial evidence in the written record, and that the denial therefore violates 47 U.S.C. § 332(c)(7)(B)(iii). Cingular also argues that the Board's denial of the Special Exception Application completely prohibits Cingular from providing personal wireless services, in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II).

On September 16, 2010, this Court ordered that the Fairfax Board provide a full written opinion explaining the reasoning for its denial of Cingular's application. That written opinion, along with a Joint Appendix containing supporting exhibits, was adopted at a public hearing of the Board on September 28, 2010, and was filed with the Court on October 4, 2010. The parties then filed their cross-motions for summary judgment.

## II. Standard of Review

Summary judgment is appropriate where the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 247-48 (1986). The Court must view the record in the light most favorable to the nonmoving party. See Bryant v. Bell Atl. Md.,

4

Inc., 288 F.3d 124, 132 (4th Cir. 2002). However, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson, 477 U.S. at 252; see also Othentec Ltd. v. Phelan, 526 F.3d 135, 140 (4th Cir. 2008).

Moreover, the mere existence of *some* alleged factual dispute cannot defeat a motion for summary judgment. Rather, the dispute must be both "material" and "genuine," meaning that it must be capable of changing the outcome of the lawsuit. Bryant, 288 F.3d at 132. If a nonmoving party bears the burden of proof on a claim at trial, the moving party may prevail on its Rule 56 motion by showing that there is a lack of evidence to carry the other party's burden as to any essential element of the cause of action. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Cray Commc'ns Inc. v. Novatel Computer Sys., Inc., 33 F.3d 390, 393-94 (4th Cir. 1994). Once the moving party has met its burden of demonstrating the absence of an issue of fact, the party opposing summary judgment may not rest on mere allegations or inferences, but must instead proffer specific facts or objective evidence showing that a genuine issue exists requiring further proceedings. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

## III. Discussion

Summary judgment in favor of the defendant, the Fairfax County Board of Supervisors, is appropriate in this case because the Board's decision to deny Cingular's Special Exception Application was a decision in writing supported by substantial evidence in the record, as required by the Telecommunications Act, 47 U.S.C. § 332(c)(7)(B)(iii). Specifically, the Fairfax Board reached a reasonable decision to deny Cingular's application on the basis of a determination that the proposed telecommunications facility was not in harmony with the local Zoning Ordinance and the County's Comprehensive Plan, that community residents were understandably opposed to the construction of a telecommunications tower in the middle of a residential area, and that the proposed flagpole or treepole facility would be highly visible at the proposed site and would depress local property values. All of these reasons, taken together, substantially support the Fairfax Board's denial of Cingular's land use application.

Furthermore, the Fairfax Board's denial did not amount to a blanket ban on wireless facilities, as prohibited by 47 U.S.C. § 332(c)(7)(B)(i)(II), particularly in light of evidence of the Board's previous approval of numerous zoning applications for telecommunications facilities, including at least three of Cingular's own telecommunications facilities in the vicinity of the proposed site.

## A. Telecommunications Act

The Telecommunications Act preserves the authority of local
boards and councils to regulate the placement and construction of
wireless facilities in accordance with local zoning plans. Section
704(c)(7) of the Act, codified at 47 U.S.C. § 332(c)(7), is entitled
"Preservation of local zoning authority," and subsection (A)
provides in relevant part:

> Except as provided in this paragraph, nothing in this
> chapter shall limit or affect the authority of a State or
> local government or instrumentality thereof over decisions
> regarding the placement, construction, and modification of
> personal wireless facilities.

Id. The primary limitations on such authority are that any decision
by a state or local government to deny a request to construct a
wireless service facility "shall be in writing and supported by
substantial evidence contained in a written record," 47 U.S.C.
§ 332(c)(7)(B)(iii), and must not "prohibit or have the effect of
prohibiting the provision of personal wireless services," 47 U.S.C.
§ 332(c)(7)(B)(i)(II).

The Fourth Circuit has defined "substantial evidence" as "such
relevant evidence as a reasonable mind might accept as adequate to
support a conclusion." 360° Commc'ns Co. v. Bd. of Supervisors of
Albemarle County, 211 F.3d 79, 83 (4th Cir. 2000); see also AT&T
Wireless PCS, Inc. v. City Council of Va. Beach, 155 F.3d 423, 430
(4th Cir. 1998). Although "substantial evidence" is more than a
mere scintilla, it is less than a preponderance of the evidence.
Va. Beach, 155 F.3d at 430. Moreover, the substantial evidence test

7

is deferential to the local authorities in that the reviewing court should not re-weigh the evidence on which a Board's decision was based, nor substitute its decision for that of the local governmental authority. Id. Rather, a court must uphold a decision that has substantial support in the record as a whole, even if that court might have decided the original matter differently. Id.; see also AT&T Wireless PCS, Inc. v. Winston-Salem Zoning Bd. of Adjustment, 172 F.3d 307, 314 (4th Cir. 1999).

The Telecommunications Act therefore reflects Congress's desire to assure the introduction of competitive wireless services, while at the same time preserving local zoning authority and ensuring significant local control over the construction of the physical wireless facilities themselves. See Va. Beach, 155 F.3d at 428-29. Accordingly, 47 U.S.C. § 332(c)(7) strikes a "balance between the national interest in facilitating the growth of telecommunications and the local interest in making zoning decisions." Albemarle County, 211 F.3d at 86. In fashioning such a compromise, Congress was mindful of the broad powers that localities have enjoyed to implement zoning and other land use controls to protect the public health, safety, convenience, and welfare. See Vill. of Euclid v. Ambler Realty Co., 272 U.S. 365 (1926); Pomponio v. Fauquier County Bd. of Supervisors, 21 F.3d 1319, 1327 (4th Cir. 1994). The Telecommunications Act is therefore not intended to affect or encroach upon the substantive standards to be applied under established principles of state and local zoning laws.

Under Virginia law, the zoning power granted to local governing bodies includes the authority to: (1) adopt a Comprehensive Plan pursuant to Va. Code Ann. § 15.2-2223 (2008); (2) regulate, restrict, permit, and prohibit the use of land and the size, height, location, and construction of certain structures, Va. Code Ann. §§ 15.2-2280(1)-(2) (2008); and (3) allow certain uses by special exception, subject to suitable regulations and safeguards and to overall conformity with the Comprehensive Plan, Va. Code Ann. § 15.2-2286(A)(3) (Supp. 2010). Under this enabling authority, the relevant Zoning Ordinance authorizes the location of telecommunications facilities in districts zoned as residential only by special exception because such a use is considered to have a greater impact upon neighboring properties and the public than those uses permitted by right. See Zoning Ordinance § 9-0001; Bd. of Supervisors of Fairfax County v. Southland Corp., 224 Va. 521, 522 (1982).

## B. Substantial Evidence

The Fairfax Board's decision to deny Cingular's Special Exception Application was a decision in writing supported by substantial evidence in the written record, as required by the Telecommunications Act, 47 U.S.C. § 332(c)(7)(B)(iii). As early as February 24, 2010, the Board sent a written letter to a Cingular representative documenting its denial of Cingular's application. The Board also prepared an accurate verbatim transcript of its February 23, 2010 hearing, as well as a written record containing

materials submitted by Cingular, correspondence in support of and in opposition to the proposed wireless construction, and the text of the relevant local zoning ordinance and other zoning guidelines. Furthermore, the Board adopted a written opinion on September 28, 2010, setting forth the rationale for its decision, and filed that opinion with this Court on October 4, 2010.[2]

In this case, the written record, taken as a whole, provides substantial evidence to support the Fairfax Board's conclusions. First, the Board identified a number of ways in which Cingular's proposed wireless facility would not be in harmony with the zoning objectives and the Comprehensive Plan for that geographical area. For example, the "Public Facilities" element of the Policy Plan, which is part of the larger Comprehensive Plan, expresses a clear preference for locating wireless facilities on existing structures, such as building rooftops, water storage facilities, and electrical utility poles, rather than constructing new freestanding facilities. See Joint App. ["J.A."] at 110. Furthermore, if a new structure is required, Objective 42(c) of the Policy provides that public lands should be considered "as the preferred location for new structures." Id. at 111. Finally, the Comprehensive Plan repeatedly refers to a requirement that any wireless facility be designed and located to

---

[2] Cingular argues that the written opinion is a post hoc rationalization that cannot be considered part of the "written record" in this case for Telecommunications Act purposes. However, in Winston-Salem, the Fourth Circuit rejected that precise line of argument, determining that a Zoning Board's formal opinion was part of the relevant written record even though it was issued after litigation commenced and months after the Board's public hearing. 172 F.3d at 315.

minimize its visual and any other impact on the character of the chosen property and the surrounding areas.  See Objectives 42(b) & 42(h) (quoted in J.A. at 92, 110).  In fact, Objective 42(i) of the Policy Plan explicitly mandates that when making a decision to grant or deny special use permits for wireless facilities, the Board must:

> Demonstrate that the selected site for a new monopole and tower *provides the least visual impact* on residential areas and the public way [and] [a]nalyze the potential impacts from other vantage points in the area to illustrate that the selected site provides the best opportunity to *minimize the visual impact* of the proposed facility.

J.A. at 92 (emphasis added).

Upon close examination of the evidence, the Fairfax Board reasonably determined that Cingular's proposed wireless facility, whether erected as an 85-foot flagpole or an 88-foot treepole, did not conform to the requirements of the local Zoning Ordinance and the Comprehensive Plan.  Cingular proposed to locate its wireless tower in the middle of an R-3 residential district, in close proximity to a number of single-family homes.  Moreover, the proposed design required the construction of a new, freestanding physical structure, which would be placed on private property instead of on public land and which was likely to be highly visible and to have a substantially adverse visual impact on nearby residential areas.  See Bd. of Supervisors' Written Op. Supporting its Denial of SE 2008-MV-031 [Cingular's Special Exception Application] at 3-8.[3]

_____

[3] Cingular has represented that its latest proposal for an 88-foot high treepole would be inconspicuous and would blend

11

Under Fourth Circuit authority, a proposed telecommunications facility's inconsistency with local zoning requirements can be sufficient to establish substantial evidence supporting the denial of a zoning application. See Albemarle County, 211 F.3d at 84 (citing a proposed tower's inconsistency with the Comprehensive Plan, an Open Space Plan, and the County's Zoning Ordinance as evidence in the record supporting a denial of a special use permit); see also Winston-Salem, 172 F.3d at 315 (concluding that there was substantial evidence in the record supporting the Zoning Board's denial of a special use permit when the Board determined that the proposed use was not in harmony with the area in which it was to be located). Accordingly, the Fairfax Board's determination that Cingular's proposed wireless facility was not in harmony with the zoning plan and the residential character of the Fort Hunt neighborhood was reasonable and is entitled to deference. See Fairfax County, 224 Va. at 522 (holding that the decision to grant or deny a special exception is a purely legislative function, and that the local legislative decision must be presumed to be valid);

---

into the nearby landscaping. However, the Fairfax Board concluded, based upon studies done in the area, that the treepole would be approximately thirty feet taller than the closest tree and would be clearly visible from the homes of residents living near the proposed site. Moreover, even if the tower were disguised to look like a tree, it would still be made of obviously synthetic materials, and its "leaves" would neither change color in the fall nor fall off in the winter, as would those of the nearby deciduous trees. Local residents therefore expressed valid concerns that the proposed treepole would be an eyesore and would not "minimize the visual impact," as required by the Comprehensive Plan.

see also <u>Richardson v. City of Suffolk</u>, 252 Va. 336, 338 (1996); <u>Bd.</u>
<u>of Supervisors v. Pales</u>, 224 Va. 629, 637-38 (1983).[4]

Moreover, the Fairfax Board properly considered the objections
of nearly fifty local residents who opposed the construction of
Cingular's proposed wireless tower on the grounds that it would be
aesthetically unappealing and inconsistent with the residential
character of the neighborhood, and would therefore likely lead to
declining property values in the area.  Such community members'
objections to the proposed facility are clearly part of the record
and were appropriately considered by the Board when it denied
Cingular's Special Exception Application.  <u>See</u> J.A. at 320-21, 324,
343-49, 366-79, 418-32; <u>see also</u> Bd. of Supervisors' Written Op. at
10.  Particularly where a residential neighborhood is involved,
courts have held that residents' concerns that telecommunications
towers will lower property values are reasonable objections that the
local Board is expected to consider.  <u>See</u> <u>Cellco P'ship v. Bd. of</u>
<u>Supervisors</u>, No. Civ. A. 7:04 CV 00029, 2004 WL 3113188, at *5 (W.D.
Va. July 2, 2004).

Cingular has attempted to dismiss the community members'
objections as merely speculative and generalized.  However, the
record in fact reveals that the opposition to the proposed wireless

---

[4]     Cingular has argued that the Fairfax Board's conclusion
that the proposed treepole did not conform to the Comprehensive Plan
should be disregarded because the Planning Commission had previously
reached a contrary decision.  However, pursuant to Zoning Ordinance
§ 9-0006(1), the Fairfax Board is empowered - and indeed required -
to make its own <u>de novo</u> determination as to whether the proposed
telecommunications facility conformed to local zoning requirements
and the Comprehensive Plan.

facility was specific, organized, and grounded in valid concerns.
For example, one local resident, R. Steven Niswander, offered his
specific objection that the "cell tower at the Mount Vernon Masonic
Lodge" would "hurt our property value, in a time when values are
already greatly depressed." J.A. at 427. E-mails from individuals
who were unable to be present at the community hearing reveal that
other residents who live near the Masonic Lodge similarly opposed
Cingular's application, expressing concerns that construction of a
large telecommunications tower in their neighborhood would "create
hardships" for their families and "disrupt[]" the neighborhood "and
the country-like setting with large quiet lots." Id. at 418, 421-22
(e-mails from Michael Bush and Darci Vanderhoff). Moreover, the
petition signed by forty-seven residents of the Fort Hunt area
states, in pertinent part, that "a cell phone tower and its
accompanying facilities . . . do not belong in a residential
community such as ours." Id. at 343-36. Those objections are
eminently reasonable, and were properly considered by the Fairfax
Board in denying Cingular's Special Exception Application.

Cingular argues that those residents' objections to the
proposed facility should be disregarded because they amounted to
"relatively little" opposition in comparison to the large number of
residents who would receive increased wireless service if the
treepole facility were constructed as planned. See Pl.'s Mot. for
Summ. J. at 9. However, the number of persons opposing a proposed
telecommunications facility, standing alone, is not determinative.

<u>Petersburg Cellular P'ship v. Bd. of Supervisors of Nottoway County</u>,
205 F.3d 688, 695 (4th Cir. 2000). Rather, the validity of a
decision to deny a particular land use application turns on the
*quality* of concerns about the proposal, not the quantity of
objectors. <u>See</u> <u>USOC of Va. R.A. #3 v. Montgomery County Bd. of</u>
<u>Supervisors</u>, 343 F.3d 262, 266 (4th Cir. 2003) (upholding the denial
of an application for a telecommunications transmission tower
despite the submission of a petition signed by 100 people in favor
of the proposed tower and only one letter in opposition to the
tower).

Additionally, although Cingular points to evidence in the
record that some residents supported Cingular's proposal out of a
desire for stronger cellular signals in the area, <u>see</u> J.A. at 407-
12, there is no evidence that those residents live near the Masonic
Lodge or would be in the direct line of sight for the proposed
cellular tower. By contrast, many of the residents who objected to
the proposed facility live in residences that adjoin the Masonic
Lodge or Fort Hunt Road, and from which the proposed treepole would
be highly visible. <u>See</u> <u>id.</u> at 421-22 (e-mail objections from a
resident who "shares a border with the lodge" and lives "in very
close, visual proximity to where the tower is slated to be
installed"); <u>id.</u> at 427 (e-mail objection from a resident whose
property "back[s] up to the Masonic Lodge"). In fact, as Supervisor
Hyland concluded at the public hearing, "it is fair to say that the
folks who live closer oppose the facility [more] than those [who]

don't live as close." Id. at 320; see also Pl.'s Mot. for Summ. J. at 10 (admitting that "[t]he dissenters largely hailed from a small area next to and behind the Proposed Site"). Given the proximity of those residents' homes to the proposed site, the Fairfax Board acted reasonably in according significant weight to their concerns.

Finally, Cingular has repeatedly cited Bd. of Supervisors v. Rowe, 216 Va. 128 (1975), in support of its argument that purely aesthetic concerns cannot constitute substantial evidence supporting the denial of an application for a special use permit. However, the holding in Rowe is simply inapposite to this case. First, the concerns expressed by Fort Hunt residents are not merely visual or aesthetic in nature, but are instead concretely tied to such matters as declining real estate values. Moreover, Rowe merely stands for the proposition that *subjective* aesthetic standards cannot be the basis for the denial of a zoning application. Specifically, in Rowe, the Virginia Supreme Court held that a locality did not have the authority to adopt an ordinance imposing vague and subjective architectural design restrictions that required proposed designs to be in "good taste." 216 Va. at 145. By contrast, the Fairfax Board in this case rested its decision on an *objective* assessment that the size, height, and location of Cingular's proposed structure would be out of keeping with the R-3 residential zoning for the surrounding geographic area. Virginia law specifically authorizes local governments to regulate and restrict the use of land on the basis of such objective criteria, and the Board was therefore well within its

16

authority under Va. Code Ann. §§ 15.2-2280(1)-(2) (2008) to make such a determination. See Va. Metronet, Inc. v. Bd. of Supervisors of James City County, 984 F. Supp. 966, 974 n.14 (E.D. Va. 1998) (holding that for a Board's decision to be supported by substantial evidence, "the proffered reasons must comport with the objective criteria in existence (i.e., zoning regulations, permit application policies, etc.)," not simply generalized aesthetic concerns). For those reasons, the Fairfax Board's decision was supported by substantial evidence in the record and will not be disturbed by this Court.

## C.  Blanket Ban on Wireless Service

Moreover, Cingular has not met its heavy burden of establishing that the Fairfax Board's decision denying its Special Exception Application amounted to a blanket prohibition on wireless service, in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II).  The burden on Cingular in mounting such a challenge is "substantial." USOC of Va. R.A. #3 v. Montgomery County Bd. of Supervisors, 343 F.3d 262, 268 (4th Cir. 2003).  Specifically, as the Fourth Circuit has held, the burden "is a heavy one: to show from language or circumstances not just that *this* application has been rejected," but that the denial had the effect of "prohibiting the provision of personal wireless services," and that "further reasonable efforts [to apply for another location for the wireless facility] are so likely to be fruitless that it is a waste of time even to try." Albemarle County, 211 F.3d at 88; see also Va. Beach, 155 F.3d at 428 (holding

that a telecommunications provider cannot prevail on a challenge to an individual zoning decision absent a blanket prohibition or a general ban, because any other interpretation of 47 U.S.C. § 332(c)(7)(B)(i)(II) "would effectively nullify local authority by mandating approval of all (or nearly all) applications").

When a local governing body's denial of a permit application does not prohibit or have the effect of prohibiting all personal wireless service in the area, a prohibition on service claim fails. Montgomery County, 343 F.3d at 268. In fact, the Fourth Circuit has never found that a denial of an individual telecommunications permit application amounts to a prohibition of service in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II). Rather, the Fourth Circuit has only recognized the "theoretical possibility" that a specific zoning decision, such as the denial of a special exception application, could constitute a blanket prohibition in the "unlikely" circumstance in which service could literally only be provided from one particular site. Montgomery County, 343 F.3d at 269 (quoting Albermarle County, 211 F.3d at 86, and observing that "such a scenario 'seems unlikely in the real world'"). Clearly, this theoretical possibility does not apply to the instant case.

The crux of Cingular's allegation in Count II of its Complaint is that the Fairfax Board's denial of its Special Exception Application amounts to an effective ban on wireless facilities in the Fort Hunt area. However, Cingular cannot reasonably support that position given that it already has three telecommunications

18

facilities in the vicinity of the proposed site, all of which had previously been approved by the Fairfax Board. See Albemarle County, 211 F.3d at 88, n.1 (concluding that "[o]bviously, if service is already provided in an area, it would be difficult to violate (B)(i)(II), which addresses only a prohibition on the provision of service."). In fact, Cingular already maintains at least five wireless facilities throughout Fairfax County, including at The Hunt at Fairfax Station, the Brandywine Swim Club in the Braddock District, the George Washington Recreation Center in the Mount Vernon District, the Mount Vernon Estate, and along Hunter Mill Road.[5] Moreover, Cingular currently provides wireless service in the Mount Vernon and Fort Hunt areas. In fact, its own coverage maps submitted during the course of this litigation show that Cingular already provides at least some existing coverage in those regions, although the coverage is not perfect and may include some "dead spots." See J.A. at 438, 444.

Courts have consistently concluded that wireless service providers are not required, nor are they legally guaranteed the ability, to provide seamless coverage for all customers. See Albemarle County, 211 F.3d at 87 (noting that regulations contemplate the existence of dead spots because the Telecommunications Act cannot require 100% coverage); see also Sprint Spectrum, L.P. v. Willoth, 176 F.3d 630, 643-44 (2d Cir. 1999) (cited in Albermarle County) (recognizing that "denials of

---

[5] T-Mobile also has several existing telecommunications sites in the same general area as Cingular's proposed site.

applications to provide service to fill coverage gaps that are limited in number or size generally will not amount to a prohibition of service"). Accordingly, the denial of a single application to provide wireless service cannot give rise to a prohibition of service claim merely because the proposed telecommunications facilities are intended to provide or improve service where gaps exist. See Va. Beach, 155 F.3d at 425 (finding that a City Council's denial of two cellular towers did not amount to a prohibition of service, even though the applicants sought to fill holes in service and to enhance existing service in areas with weak cellular signals).

Additionally, even assuming that Cingular has less than optimal coverage in the Fort Hunt area, it still cannot meet its "heavy burden" of demonstrating that the denial of this one particular application is tantamount to a blanket prohibition on wireless service. Cingular argues that the Board's decision constituted a denial of coverage because there are "simply no other feasible alternatives to the Proposed Site." Pl.'s Mot. for Summ. J. at 28, 30. However, it appears that there are in fact several other possible telecommunications sites in the area, which, while perhaps not ideal from Cingular's perspective, would wholly or partially meet its coverage objectives without posing the sorts of problems that led to the Fairfax Board's denial of this particular application.

For example, during the public hearing, the Fairfax Board repeatedly mentioned the possibility of locating the proposed tower on public land in the Fort Hunt National Park, an option which Cingular rejected due to concerns that its application might take years to process and would ultimately be denied. See J.A. at 317-18. However, Cingular has yet to even submit such an application to Fort Hunt National Park authorities, and its concerns, which rest on extrapolation from the fact that Verizon had difficulties locating telecommunication facilities in Rock Creek Park and Great Falls Park, are therefore entirely speculative at this point. Additionally, Cingular dismissed several potential alternative sites, most of which would have involved co-location of a wireless tower on top of an existing structure, because they would not have fully met its coverage objectives. See id. at 97, 115, 161, 317. However, there is no evidence to demonstrate that Cingular could not at the very least have *improved* its coverage by locating a tower at one of those sites, or could possibly even have fully achieved its desired coverage by employing other technologies or using several of those other locations in combination. See, e.g., J.A. 325 (statement by Supervisor Smyth at the public hearing on Cingular's application, discussing new technologies allowing for the construction of unobtrusive telecommunications facilities along utility poles in residential areas). Therefore, Cingular's argument that there are "no other feasible alternatives" to the Masonic Lodge site is unpersuasive.

Finally, Cingular is incorrect in arguing that the Fairfax Board was obligated to demonstrate that locating a wireless facility in Fort Hunt National Park, or at any of the other possible sites, would be less intrusive than locating the facility at the proposed Masonic Lodge site. The Board is under no obligation to assist Cingular in identifying the ideal location for its wireless towers. Nor is the Board legally required to approve Cingular's desired location simply so that it can meet its entire coverage objectives with a single wireless facility. Rather, the Board must merely determine, based upon traditional zoning principles, whether proposed facilities and special exception permits like Cingular's should be approved or rejected. See Va. Code Ann. § 15.2-2286(A)(3) (Supp. 2010).

Moreover, the Fourth Circuit has explicitly rejected the argument that the Telecommunications Act requires local authorities to approve the "least intrusive means to close a significant gap in service," holding that such an interpretive rule "reads too much into the Act" and "effectively creates a presumption, shifting the burden of production to the local government to explain its reasoning for denying such an application." Albemarle County, 211 F.3d at 87. In fact, as the Fourth Circuit explained, under the Telecommunications Act, "[a] community could rationally reject the least intrusive proposal in favor of a more intrusive proposal that provides better service or that better promotes [the] goals of the community." Id. That is exactly what the Fairfax Board did here:

it considered the local Zoning Ordinance and the Comprehensive Plan, the residential character of the surrounding community, and the objections of numerous community members, and then made the reasonable decision that placing a wireless facility at the Mount Vernon Masonic Lodge would be inappropriate. The Fairfax Board plainly did not impose a blanket ban on wireless coverage in the area, and Cingular remains free to reapply for a telecommunications facility at a different location in the area which more closely conforms to the Zoning Ordinance and the objectives of the Comprehensive Plan.

## IV. Conclusion

Accordingly, for all these reasons, the Court will deny Cingular's Motion for Summary Judgment, grant the Fairfax County Board of Supervisors' Motion for Summary Judgment, and enter judgment in favor of the Board in an Order to be issued along with this Memorandum Opinion.

Entered this _10ᵗʰ_ day of November, 2010

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge

23